IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RENEE K.,[1]                                           No. 3:23-cv-00709-MK

                Plaintiff,                          **OPINION & ORDER**

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.


KASUBHAI, Magistrate Judge:

      Plaintiff Renee K. brings this action for judicial review of the Commissioner of Social

Security ("Commissioner")'s decision denying her application for Disability Insurance Benefits

(DIB) under Title II of the Social Security Act ("the Act"). This Court has jurisdiction under 42

U.S.C. §§ 405(g) and 1383(c). For the reasons below, the Commissioner's final decision is

REVERSED, and this case is REMANDED for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

## PROCEDURAL BACKGROUND

Plaintiff's claim for DIB was denied initially and upon reconsideration. Tr. 162, 170. She requested an administrative hearing and appeared before an administrative law judge (ALJ) in February 2020, but the hearing was held over so that Plaintiff could retain an attorney. Tr. 96-101. On December 29, 2021, Plaintiff, her attorney, and a vocational consultant appeared at an administrative hearing before ALJ Cynthia Rosa. Tr. 75-95. In a written decision dated January 27, 2022, the ALJ denied Plaintiff's claim for benefits. Tr. 51-74. The Appeals Council denied Plaintiff's subsequent petition for review, rendering the ALJ's decision final. Tr. 1-5. This appeal followed.

## FACTUAL BACKGROUND

Born in February, 1972, Plaintiff was 46 years old when she applied for benefits. Tr. 299. She alleged disability as of March 31, 2017, due to back problems, spinal bifida aculta, degenerative discs, arthritis, scoliosis, spinal stenosis, PTSD, and anxiety. Tr. 337. Her date last insured was March 31, 2020. Tr. 125.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the

ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if

not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to

determine the claimant's "residual functional capacity" ("RFC"), which is an assessment of

work-related activities that the claimant may still perform on a regular and continuing basis,

despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c),

416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the

claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e),

416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work,

the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the

Commissioner must establish that the claimant can perform other work that exists in significant

numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the

Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ's DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since the alleged onset date. Tr. 57.[2] Next, at steps two and three, the ALJ determined

that Plaintiff has the following severe impairments: "degenerative disc disease, obesity, major

depressive disorder, and posttraumatic stress disorder." Tr. 57. However, the ALJ determined

that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment.

Tr. 57. The ALJ concluded that Plaintiff has the residual functional capacity to perform light

work as defined in 20 C.F.R. §§ 404.1567(b) with the following limitations:

---

[2] "Tr." refers to the Transcript of the Social Security Administrative Record, ECF No. 6, provided by the Commissioner.

she can occasionally climb ramps and stairs, but never climb ropes, ladders, and
scaffolds; she can occasionally stoop, crouch, crawl, and kneel; she can do
occasional overhead reach bilaterally; she can change position between sitting and
standing in 30-60 minute intervals with flexibility to stand and walk four hours in
an eight-hour day; she can do simple, routine repetitive tasks with simple
instructions, and a Reasoning Level of 1-2.

Tr. 59. At step four, the ALJ found Plaintiff could return to her past relevant work as a cashier.

Tr. 67. Alternatively, at step five, the ALJ found that Plaintiff was able to perform other work

existing in significant numbers in the national economy. Tr. 68. Thus, the ALJ concluded that

Plaintiff is not disabled. Tr. 69.

In this appeal, Plaintiff argues that the ALJ erred by (I) erroneously discounting her

subjective symptom testimony, and (II) improperly assessing Family Nurse Practitioner (FNP)

Alex Pandzik's medical opinion. Pl. Br., ECF No. 9 at 1-16.

## DISCUSSION

I.    **Symptom Testimony**

Plaintiff argues that the ALJ erred in discounting her symptom testimony. Pl. Br., ECF

No. 7 at 3-9. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL

5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom

evaluation. *Molina v. Astrue*, 674 F.3d 114, 1112 (9th Cir. 2012) (superseded on other grounds).

First, the ALJ determines whether there is "objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged."

*Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there

is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in

order to reject the claimant's testimony about the severity of the symptoms." *Id.*

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient."

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "An ALJ does not provide specific, clear,

and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the hearing, Plaintiff testified about the mobility issues and pain she suffers as a result of her physical impairments. When asked about whether she had worked since 2015, Plaintiff shared that she "cannot move," elaborating that "to be able to stand and sit for long periods of time or even short periods of time is very difficult." Tr. 83. She testified that if she stands for too long her legs get weak, but that sitting is also "really uncomfortable," and she has to "switch positions constantly. Tr. 83. Plaintiff testified that these were the issues that "prevent[ed] [her] from working full time." Tr. 83. Elaborating on extent of her symptoms, Plaintiff added that her lower back has been "very painful," "inflamed" and "stiff" since her spinal fusion surgery in 2015. Tr. 86, 356. Plaintiff also described "excruciating pain that somebody is stabbing me in my hips" when she gets up in the mornings, or goes from sitting to standing due to her degenerative joint disease in her hips. Tr. 86. Her knees likewise make standing and getting up difficult because "one of the knees does tend to pop out of socket," causing her to almost fall down numerous times. Tr. 87.[3] In terms of how she spends her time, Plaintiff shared that she spends

---

[3] Plaintiff also testified about her symptoms related to mental health limitations. Tr. 87-88. Because these are not before the Court on appeal, the Court does not summarize that testimony here. *See* Pl. Br. at 3-15 (challenging only the ALJ's conclusions concerning her physical symptom testimony).

most of her days at home, that she does light housework, and is "most of the time…on [her] phone…watching videos." Tr. 85.

In a written function report, Plaintiff reported that since her spinal fusion surgery in 2015 she cannot sit or stand "for even short bits of time, and that she "mostly lay[s] down." Tr. 356. She shared that she feeds and cares for her dog and cat, and does laundry and dishes "most days." Tr. 357. Plaintiff can perform self-care like dressing and bathing, but added that all self-care activities very hard due to constant pain. Tr. 358. Plaintiff adds that she does not prepare meals because she "can't stand to cook." Tr. 358. She can walk "less than a city block" before needing to stop and rest, and uses a walker "all the time" since 2015. Tr. 362.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 60. However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 60. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with objective medical evidence, and a history of conservative treatment. Tr. 60-65.

### A. Objective Medical Evidence

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original); s*ee also Connett v.*

*Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). A claimant's failure to report symptoms to providers is another valid basis to find a claimant's symptom allegations unreliable. *Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006).

The ALJ did not reasonably discount Plaintiff's allegations about the severity of her congenital back problems and joint pain when sitting and standing as inconsistent with the record. Conflict with objective medical evidence can be a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). At the hearing, Plaintiff testified that her weakness, back and hip pain, and inability to move were the root of her decision to stop working. Tr. 85-87. She described how she "cannot move," has pain both when sitting and standing, and uses a walker. Tr. 85-88. Plaintiff further shared that she needs to rest after walking a block, and "mostly lays down" during the day. Tr. 356, 362. The ALJ purported to discount several aspects of this testimony based on its inconsistency with the record, but did not do so with sufficient clarity or thoroughness. Although the ALJ cited medical records from 2017-19 where Plaintiff displayed normal gait, normal muscle tone, and an ability to rise from a seated position, Tr. 62 (citing Tr. 540, 749, 1007), the medical record contains evidence that Plaintiff requires a walker and needs significant rest after only minimal exertion. Tr. 131, 487 (uses walker at baseline). Nor do the ALJ's record citations showing normal gait and muscle tone truly undermine Plaintiff's fatigue testimony. *See* Tr. 491, 499, 504, 506, 669, 967, 975, 1015, 1223. This failure to address Plaintiff's need for a walker was error. *See Wischmann v. Kijakazi*, 68 F.4th 498, 505 (9th Cir. 2023) (quoting *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)) ("an ALJ 'need not discuss all evidence presented to her. Rather, [an ALJ] must explain why significant probative evidence has been

rejected.'"). The ALJ also erred by relying too heavily on objective findings, which is not a clear and convincing reason to discount Plaintiff's symptom testimony, and by overlooking records which supported Plaintiff's testimony. *See* Pl. Reply, ECF No 10 at 3-5. On remand, the ALJ must fully address Plaintiff's need for a walker, the elements of the medical record that support Plaintiff's testimony, and Plaintiff's testimony about fatigue and weakness.

### B. Conservative Treatment

The ALJ also erred by discounting Plaintiff's symptom testimony in light of her history of conservative treatment, and failure to follow treatment recommendations. Tr. 30-32. "[I]n order to get benefits, an individual must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, unless the individual has an acceptable reason for failing to follow the prescribed treatment." *Orn v. Astrue*, 495 F.3d 625, 636-37 (9th Cir. 2007). "A claimant's subjective symptom testimony may be undermined by an unexplained, or inadequately explained, failure to ... follow a prescribed course of treatment." *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (citations omitted). Acceptable reasons for failing to follow prescribed treatment include the treatment being contrary to the claimant's religion, the fact that similar treatment has been tried in the past with unsuccessful results, the recommended treatment being of great magnitude or unusual nature, or that the treatment would involve amputation of an extremity. 20 C.F.R. §§ 404.1530, 416.930. Likewise, an ALJ may reject a claimant's testimony when the severity of symptoms alleged is inconsistent with the level or frequency of treatment. *See Molina*, 674 F.3d at 1113 (quoting Social Security Ruling ("SSR") 96–7p, 1996 WL 374186, at *7 (July 2, 1996)).

The ALJ erred by discounting Plaintiff's back pain testimony because her course of treatment for that pain was supposedly conservative. A lack of evidence of treatment in the

record can support an ALJ's decision to discount testimony because the claimant's underlying treatment was conservative. *See Woods v. Kijakazi*, 32 F. 4th 785, 794 (9th Cir. 2022) (affirming ALJ's discounting of subjective testimony based on "very conservative" treatment of mostly medication alone and a knee injection); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). The ALJ highlighted the fact that Plaintiff did not receive any emergency care for chronic back pain or pursue other treatment "modalities such as yoga, massage, acupuncture or use of a TENS unit." Tr. 63. The ALJ noted that Plaintiff's pain medication regimen was conservative as well. Tr. 61, 63. While this course of treatment may qualify as "conservative" in some circumstances, it was not a clear and convincing reason to discount Plaintiff's testimony on this record. For one thing, Plaintiff gave several reasons, such as lack of insurance coverage, that more significant treatment options were not open to her. Tr. Tr. 496, 1158. She also had a pending referral to a spine surgeon. Tr. 1174, 1193. And ALJs cannot reject a claimant's testimony due to allegedly conservative treatment "where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle*, 533 F.3d at 1162; *see, e.g., Trevizo*, 871 F.3d at 680–81 (citing *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)). The ALJ did not reference these several justifications for Plaintiff's failure to seek more significant treatment, and therefore erred in considering Plaintiff's conservative treatment as a basis to discount her testimony. On remand, the ALJ must consider Plaintiff's justifications for her purportedly conservative treatment.

## II.    Medical Opinion Evidence

Plaintiff also argues that the ALJ erred in rejecting the medical opinions of Nurse Practitioner Alex Pandzik, FNP. For claims filed on or after March 27, 2017, ALJs are no longer

required to give deference to any medical opinion, including treating source opinions. Rules

Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan.

18, 2017); 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. §

404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization,

and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the

evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical

opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is

required to explain how supportability and consistency were considered and may explain how

the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical

opinions or prior administrative findings "about the same issue are both equally well-supported

... and consistent with the record ... but are not exactly the same," the ALJ is required to explain

how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new

regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or

inconsistent without providing an explanation supported by substantial evidence." *Woods v.*

*Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

    A.   *FNP Alex Pandzik*

    Plaintiff began seeing Family Nurse Practitioner Alex Pandzik for primary care in June,

2014, and NP Pandzik continued to care for Plaintiff throughout the relevant period. Tr. 1020. At

the request of Plaintiff's counsel, NP Pandzik prepared two functional assessments of Plaintiff--

one in May, 2020, and another in December, 2021. Tr. 1020, 1261. In 2020, NP Pandzik

assessed Plaintiff as capable of lifting and carrying in the light exertional range but limited to

less than 2 hours of standing and walking and 2 hours of sitting. Tr. 1021. He further felt that she

would be off-task about 20% of a work-week and would miss at least 16 hours of work per

month. Tr. 1022. In December 2021, NP Pandzik assessed Plaintiff as limited to lifting and

carrying 10 pounds and sitting, standing, and walking for 2 hours a day. Tr. 1262. She could

never climb, balance, kneel, crouch, or crawl. Tr. 1263. She would be off-task 10% of the week

and would miss at least two days of work per month due to her pain. Tr. 1263.

 The ALJ rejected NP Pandzik's opinion as unpersuasive. Tr. 67. The ALJ reasoned that

"the significant limitations proffered by Mr. Pandzik are out of proportion to the objective

medical evidence," because NP Pandzik's own records did not bear out the limitations he

imposed. Tr. 57-58, 64-65, 67. The ALJ further concluded that NP Pandzik's opinions were

inconsistent with the opinions of state agency reviewers Neal Berner, M.D., and Susan Moner,

M.D., which she found persuasive. Tr. 67. The ALJ also found NP Pandzik's opinions

unpersuasive because they were based on Plaintiff's subjective statements, rather than objective

medical evidence. Tr. 67. Finally, the ALJ also discounted NP Pandzik's opinions because they

were issued after the relevant period. Tr. 67.

 Regarding "supportability," the ALJ adequately discussed the strength of the evidence

underlying NP Pandzik's opinions when finding them unpersuasive. The supportability factor

requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the

objective medical evidence and supporting explanations presented by a medical source are to

support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). First, the ALJ reasonably

found NP Pandzik's opinions less persuasive because they were proffered after the relevant

period had ended. Tr. 67. While evidence generated after the date last insured can be relevant

and probative when it bears upon the severity of the Plaintiff's conditions in the relevant period,

ALJs may reasonably find that, under the circumstances, they are less probative than

contemporaneous opinions. *See, e.g., Yolanda P. v. Comm'r of Soc. Sec. Admin.,* No. 6:19-CV-00721-YY, 2020 WL 4504699, at *7 (D. Or. Aug. 5, 2020) (noting "there may be a thumb on the scale in favor of opinions flowing from contemporaneous exams," but that "an ALJ still must carefully consider retrospectively-rendered opinions")(internal citations omitted). The ALJ thoroughly analyzed NP Pandzik's opinions, and found them inconsistent with treatment notes, and inconsistent with each other. The ALJ first noted that NP Pandzik's treatment notes from 2017-18 showed Plaintiff with normal gait, muscle tone, and mobility, which conflicted with his later opinions about her "extreme" limitations. Tr. 61, 67. The ALJ also discounted NP Pandzik's conclusions because the December 2021 and May 2020 opinions are inconsistent, with no explanation for the differences. Tr. 67; *compare* Tr. 1263 *with* Tr. 1022. Furthermore, since the ALJ discounted Plaintiff's own testimony about the extent to which her pain limits her mobility, and NP Pandzik's opined limitations largely relied on Plaintiff's back pain as a basis for the limitations, this was a further legitimate reason to find the opinion lacked support from the record. Tr. 67; *see, e.g., Jacaway v. Kijakazi,* No. 20-36075, 2022 WL 728795, at *1 (9th Cir. Mar. 10, 2022) (affirming where an ALJ "discounted some medical opinions because those opinions relied heavily on [claimant]'s self-reporting, which the ALJ already had concluded was unreliable). In all, the ALJ adequately considered the supportability of NP Pandzik's opinions by examining the bases of the conclusions, and discounting them for their inconsistency and lack of thoroughness.

The ALJ also adequately addressed the consistency of NP Pandzik's opinions when finding them unpersuasive. The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ found NP Pandzik's opinion conflicted with opinions from

Drs. Berner and Moner, who found Plaintiff would be capable of light exertional and limited to standing and walking for four hours of an eight-hour workday and performing only occasional postural activities. Tr. 66, 135–37, 153–54. The ALJ found Drs. Berner and Moner's opinions persuasive because they were "well supported" and consistent with the record, noting their alignment with opinions from other treating and examining providers. Tr. 66. Plaintiff argues the ALJ erred by relying on these opinions because they "last reviewed the record in December 2018 and were unaware of any of Plaintiff's treatment, including her referral for surgery and her limited ability to stand or walk as demonstrated by her performance at her physical therapy appointments." Pl. Br. ECF No. 7 at 11 (citing Tr. 1148). The performance from physical therapy Plaintiff cites all occurs after the relevant period, however, and does not meaningfully undermine the persuasiveness of Drs. Berner and Moner's opinions. The ALJ also found NP Pandzik's opinion inconsistent with other providers' notes reflecting Plaintiff's normal gait, strength, and mobility. Tr. 57–58, 64–65, (citing, e.g. Tr. 499, 535, 539, 551). Ultimately, the Court finds that the ALJ sufficiently addressed the consistency and supportability factors, and supported her decision to discount NP Pandzik's opinions with substantial evidence.

## CONCLUSION

For the reasons given above, I REVERSE the Commissioner's decision and REMAND this case for further proceedings.

IT IS SO ORDERED.

DATED this <u>13th</u> day of August 2024.


<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge